**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| SEARS HOLDINGS CORPORATION, | ) Case No. 18-23538 (RDD) |
| *et al.*, | ) Jointly Administered |
| Debtors. | ) |
| | ) |
| | ) |
| | ) |
| SEARS HOLDINGS CORPORATION; SEARS, | ) Adversary Proceeding |
| ROEBUCK AND CO.; AND THE OFFICIAL | ) Case No. 20-07007 |
| COMMITTEE OF UNSECURED CREDITORS OF | ) |
| SEARS HOLDINGS CORPORATION, *ET AL.*, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| ANDREW H. TISCH, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' OMNIBUS RESPONSE TO MOTIONS TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... iii

SUMMARY OF ARGUMENT ..................................................................................... 1

ARGUMENT ................................................................................................................ 3

I.    The Standard of Review for Motions to Dismiss..................................................... 3

II.   Counts 1 and 2 Relating to the Lands' End Transfers are Not Time Barred, as Neither New York's Borrowing Statute nor its Choice of Law Rules Apply to the Plaintiff's Causes of Action 4

A.    Under Section 544, Federal Law May be the "Applicable Law" for Avoidance of Fraudulent Transfers ......................................................................................... 5

B.    New York's Choice of Law Rules Do Not Apply to FDCPA Claims ............................ 7

C.    The Defendants' Theory Violates Fundamental Principles of American Jurisprudence . 9

1.    Under the Doctrine of *Nullum Tempus*, Agencies of the United States Are Not Subject to State Law Statutes of Limitations ......................................................... 9

2.    The Six-Year Statute of Limitations Implemented by Congress for Claims Arising Under the FDCPA Preempts State Law Statutes of Limitation ........................................... 11

III.   The Section 546(e) Safe Harbor Does Not Apply to the Lands' End Transfers................ 12

A.    The Lands' End Transfer Was Not a "Qualifying Transaction" .................................... 14

B.    The Lands' End Transfer Was Not To, From, or For the Benefit of a Financial Institution ............................................................................................................. 21

CONCLUSION ............................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*45 John Lofts, LLC v. Meridian Capital Grp. LLC (In re 45 John Lofts LLC)*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) ..................................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 3, 4

*Bd. of Trs. Of W. Conference of Teamsters Pension Tr. Fund v. H.F. Johnson Inc.*,
  830 F.2d 1009 (9th Cir. 1987) .................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 4

*DiFolco v. MSNBC Cable, L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ................................................................................ 4, 23

*E.E.O.C. v. W.H. Braun, Inc.*,
  347 F.3d 1192 (10th Cir. 2003) ............................................................................... 11

*Gordon v. Harrison (In re Alpha Protective Servs.)*,
  531 B.R. 889 (Bankr. M.D. Ga. 2015) ...................................................................... 12

*Haynes v. Chase Bank USA, N.A. (In re Haynes)*,
  No. 11-23212 (RDD), 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) .......... 19

*Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*,
  570 B.R. 816 (Bankr. D. Idaho 2017) ............................................................... 6, 9, 12

*Holliday v. K Rd. Power Mgmt., LLC (In re Bos. Generating LLC)*,
  617 B.R. 442 (Bankr. S.D.N.Y. 2020) ...................................................................... 18

*Holmberg v. Ambrecht*,
  327 U.S. 392 (1940) .................................................................................................. 11

*In re Alpha Protective Servs., Inc.*,
  531 B.R. 889 (Bankr. M.D. Ga. 2015) ........................................................................ 7

*In re Bernard L. Madoff Inv. Securities LLC*,
  454 B.R. 317 (Bankr. S.D.N.Y. 2011) .................................................... 5, 14, 16, 19

*In re Cairns & Assocs., Inc.*,
  372 B.R. 637 (Bankr. S.D.N.Y. 2007) ...................................................................... 16

*In re Global Crossing, Ltd.*,
  385 B.R. 52 (Bankr. S.D.N.Y. 2008) ................................................................... 13, 14

*In re Greater Se. Cmty. Hosp. Corp. I*,
  365 B.R. 293 (Bankr. D.C. 2006) ....................................................................... 10, 11

*In re Innovative Commc'n Corp.*,
  No. ADV 08-3004, 2011 WL 3439291 (Bankr. D.V.I. Aug. 5, 2011) ........................ 8

*In re Kaiser*,
  525 B.R. 697 (Bankr. N.D. Ill. 2014) ......................................................................... 9

*In re Kipnis*,
  555 B.R. 877 (Bankr. S.D. Fla. 2016) .................................................................... 9, 10

*In re Nine W. LBO Sec. Litig.*,
  No. 20 MD. 2941 (JSR), 2020 WL 5049621 (S.D.N.Y. Aug. 27, 2020) .............. 12, 18

*In re Tribune Company Fraudulent Conveyance Litigation*,
  946 F.3d 66 (2d Cir. 2019) ................................................................................ 14, 21, 23

*In re Tronox Inc.*,
  503 B.R. 239 (Bankr. S.D.N.Y. 2013) .......................................................... passim
*Kramer v. Time Warner, Inc.*,
  937 F.2d 767 (2d Cir. 1991) ......................................................................... 21
*MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*,
  675 F.3d 530 (5th Cir. 2012) ......................................................................... 7
*Merit Mgmt. LP v. FTI Consulting, Inc.*,
  138 S.Ct. 883 (2018) ..................................................................................... 17
*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) .......................................................................... 4
*O'Toole v. Karnani (In re Trinsum Grp.)*,
  460 B.R. 379 (Bankr. S.D.N.Y. 2011 ........................................................... 8
*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*,
  277 B.R. 20 (S.D.N.Y. 2002) ........................................................................ 8
*Rohr v. Crime Victims Compensation Comm'n*,
  No. 16-00162, 2019 WL 3294798 (D. Hawaii) (July 22, 2019) .................... 11
*S.E.C. v. Rind*,
  991 F.2d 1486 (9th Cir. 1993) ....................................................................... 9
*Saffron v. Dep't of Navy*,
  561 F.3d 938 (D.C. Cir. 1977) ....................................................................... 11
*Shomo v. City of New York*,
  579 F.3d 176 (2d Cir. 2009) .......................................................................... 4
*Smouha v. MTA and J.P. Morgan Chase*,
  797 N.Y.S.2d 278 (N.Y. Sup. Ct. 2005) ....................................................... 15
*South Carolina v. Catawba Indian Tribe, Inc.*,
  476 U.S. 498 (1986) ....................................................................................... 11
*Staehr v. Hartford Fin. Servs. Grp.*,
  547 F.3d 406 (2d Cir. 2008) .......................................................................... 21
*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
  620 B.R. 505 (Bankr. S.D.N.Y. 2020) .......................................................... 18
*U.S. Bank Nat'l Assn v. Verizon Communs. Inc.*,
  892 F. Supp. 2d 805 (N.D. Tex. 2012) ......................................................... 18
*United States v. Jepsen*,
  131 F. Supp. 2d 1076 (W.D. Ark. 2000) ....................................................... 10
*United States v. Moore*,
  968 F.2d 1099 (11th Cir. 1992) ..................................................................... 10
*United States v. Neidorf*,
  522 F.2d 916 (9th Cir. 1975) ......................................................................... 10
*United States v. Nemecek*,
  79 F.Supp.2d 821 (N.D. Ohio 1999) ............................................................. 10
*United States v. Summerlin*,
  310 U.S. 414 (1940) ....................................................................................... 9
*Vieira v. Gaither (In re Gaither)*,
  595 B.R. 201 (Bankr. D.S.C. 2018) .............................................................. 6
*Weinman v. Fidelity Capital Appreciation Fund (In re Integra Realty Res., Inc.)*,
  198 B.R. 352 (Bankr. D. Colo. 1996) ........................................................... 15

## Statutes

11 U.S.C. § 544 ............................................................................................................... passim
11 U.S.C. § 546(e) .......................................................................................................... passim
11 U.S.C. § 548 ..................................................................................................................... 5
11 U.S.C. § 741(7)(A)(i) ................................................................................................. 14, 15
28 U.S.C. § 2415(a) ............................................................................................................. 10
28 U.S.C. § 2416(c) ............................................................................................................. 10
Federal Debt Collection Procedures Act 28 U.S.C. § 3306 .................................................. 6
Puerto Rico Internal Revenue Code of 2011 13 L.R.P.A. § 30621 ...................................... 6

## Rules

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 4

## Other Authorities

Jay Jaffe, *How Big Is the § 546(e) Forward Contract Safe Harbor?*, XXXII ABI Journal 1, 28,
    72-73, February 2013 ..................................................................................................... 13
Robert W. Miller, *Overtime for Estate Representatives Stepping into the Shoes of the U.S.*,
    33 Am. Bankr. Inst. J. 24, 24 (2014) ............................................................................... 5

## SUMMARY OF ARGUMENT

Plaintiffs seek to avoid and recover from Defendants certain fraudulent transfers related to (1) the April 2014 spin-off of Lands' End Inc. and resulting share distribution (the "**Lands' End Transfers**") and (2) the 2015 transfer to Defendants of Seritage subscription rights (the "**Seritage Transfers**"). Plaintiffs allege actual and constructive fraud as to both these transactions, for a total of four counts. These counts comprise a subset of claims Plaintiffs allege against other defendants in *Sears Holding Corp., et al. v. Edward Scott "Eddie" Lampert, et al.*, Adv. Pro. No. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "**First Action**"). Certain defendants in the First Action (the "**ESL Defendants**") have moved to dismiss two substantially identical counts relating to the Seritage Transfers, and after robust briefing and oral argument, the motions are under consideration by this Court. Mindful of the time and resources of both clients and the Court, neither the Plaintiffs nor Defendants here repeat arguments that have already been fully briefed and argued by competent counsel in the First Action. Accordingly, the *Non-Insider Defendants' Motion to Dismiss the Adversary Complaint* (the "**Non-Insider Defendants' Motion**") adopted certain arguments advanced by the ESL Defendants in the First Action as to the Seritage Transfers;[1] Plaintiffs hereby adopt and incorporate by reference the points and authorities cited by Plaintiffs in their response to the ESL Defendants' Motion to dismiss the Seritage Transfer counts in the First Action, as well those points made at oral argument on said motions and in post-argument correspondence to the

---

[1] *See Memorandum of Law in Support of the Non-Insider Defendants' Motion to Dismiss the Complaint* ("**Non-Insider Defendants' Brief**") (ECF No. 40), p. 1, incorporating arguments from the "**ESL Defendants' Motion**." (First Action, ECF No. 105).

Court.[2] The Non-Insider Defendants' Motion to dismiss the counts related to the Seritage Transaction[3] should be denied for the same reasons.

Notably, the ESL Defendants did not move to dismiss every count in the complaint filed by Plaintiffs in the First Action. Of relevance here, the ESL Defendants concluded that the Lands' End Transfers would require evidentiary support before the Court could reach a decision on the merits of Plaintiffs' claims and any potential defenses thereto, and therefore the ESL Defendants specifically declined to move to dismiss the counts related to the Lands' End Transfers. (*See* ESL Def. Mtn., First Action, ECF No. 105, p. 2). The Non-Insider Defendants,[4] in contrast, now assert novel – and meritless – reasons to dismiss the claims relating to the Lands' End Transfers prior to factual inquiry into those transfers. The Non-Insider Defendants' Motion and its related joinders[5] should be denied in this respect as well, as neither the statute of limitations nor the section 546(e)

---

[2] Plaintiffs specifically incorporate the arguments from *Plaintiffs' Brief II in Opposition to Defendants' Motions to Dismiss Plaintiffs' Fraudulent Transfer, Illegal Dividend, Unjust Enrichment, Disallowance and Equitable Subordination Claims* (First Action, ECF No. 164) ("**Plaintiffs' Brief II**"), Plaintiffs' letter to the Court dated July 16, 2020 (First Action, ECF No. 212), and Plaintiff's letter to the Court dated September 21, 2020 (First Action, ECF No. 220).

[3] Capitalized terms used but not defined herein have the meanings given to them in the Complaint filed in this action [ECF No. 1] (the "**Complaint**").

[4] The "**Non-Insider Defendants**" are those Defendants listed on Exhibit A to the Motion. (ECF No. 39).

[5] Plaintiffs' Omnibus Response to Motions to Dismiss ("**Plaintiffs' Response**") addresses the following motions to dismiss and joinders: The Non-Insider Defendants' Motion [ECF. Nos. 39-41]; the AQR Defendants' joinder [ECF No. 43]; the DFA Defendants' joinder [ECF No. 46]; Defendant Kenden Alfond's joinder [ECF No. 48]; Defendant Norges Bank's joinder [ECF No. 51]; Defendant HBOS Final Salary Pension Scheme's joinder [ECF No. 55]; QIT2 IE DFA CORE MANDATE's joinder [ECF No. 60]; Defendant MUFG Union Bank, N.A.'s joinder [ECF No. 61]; the Horizon and Prescott defendants' motion and joinder [ECF Nos. 62-63] (the "**Prescott Motion**" and together with the Non-Insider Defendants' Motion, the "**Motions**"); the Renaissance and Hap Trading, LLC defendants' motion and joinder [ECF No. 64]; the Tisch, Lockheed Martin, Mason Capital, and S.A.C. Capital Defendants' joinder [ECF No. 65]; Defendant Trustee of the Thomas J. Tisch 1994 Issue Trust's joinder [ECF No. 67]; and HSBC Bank Bermuda Limited's joinder [ECF No. 69] (collectively, the "**Joinders**"). The Maverick defendants filed a joinder as well, but subsequently withdrew the motion after Plaintiffs filed a dismissal of the Maverick defendants. [*See* ECF Nos. 53 (joinder), 77 (notice of dismissal), and 78 (withdrawal of joinder)].

safe harbor provide a basis to dismiss the fraudulent transfer claims related to the Lands' End Transfers.

The statute of limitations issue can readily be dispensed with as the Non-Insider Defendants are mistaken that the New York borrowing statute requires the imposition of a statute of limitations other than that proscribed by federal law. Plaintiffs alleged facts that, when taken as true, provide that they have stepped into the shoes of a requisite qualifying creditor holding a valid claim under federal law as of the Petition Date. New York borrowing statutes do not curtail the look-back period provided under federal law, and as such, Plaintiffs' cause of action is not subject to any state law statute of limitations.

The Non-Insider Defendants' safe harbor arguments addressed to the Lands' End claims are also without merit. First, as a shareholder dividend issued for no consideration, the Lands' End Transfers were not made "in connection with a securities contract." Even under the broadest definition of a "securities contract," this gratuitous transfer is not protected by section 546(e) simply because a small number of shares allegedly were sold in an ancillary open market transaction. Second, it is premature at the motion to dismiss stage to conclude that either of the Plaintiffs can be considered a "financial institution," as required by section 546(e), based on their relationship with the alleged Computershare entity that purportedly aided in facilitating the spin-off. Indeed, Defendants have not even attempted to submit to the Court the agreement by which Sears purportedly can be transformed into a financial institution.

## ARGUMENT

### I.    The Standard of Review for Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S.

3

544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court should "'accept[ ] all factual allegations as true, and draw[ ] all reasonable inferences in the plaintiff's favor.'" *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A court is not required to accept as true those allegations that amount to no more than legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Here, the Non-Insider Defendants and the other moving parties offer three arguments that they believe support dismissal: first, that the Lands' End fraudulent transfer claims are time-barred under New York law; second, that the Lands' End fraudulent transfer claims are barred by the "securities contract" safe harbor under section 546(e) of the Bankruptcy Code; and finally, that the fraudulent transfer claims related to the Seritage Transfers are barred because they do not seek to recover estate property. As explained below and in Plaintiffs' Brief II, none of these arguments are availing, and the Motions should be denied.

## II.    Counts 1 and 2 Relating to the Lands' End Transfers are Not Time Barred, as Neither New York's Borrowing Statute nor its Choice of Law Rules Apply to the Plaintiff's Causes of Action

Plaintiffs' claims are not time-barred because Plaintiffs have properly pleaded the existence of a predicate creditor that could avoid the Lands' End (and Seritage) Transfers under applicable law; in this case applicable *federal* law. Section 544 allows a trustee to stand in the shoes of any unsecured predicate creditor and assert any claims that creditor may have been able to assert as of the petition date. That section is often used in conjunction with state law, but also entitles a trustee to assert claims under federal law so long as there is an unsecured creditor entitled to bring those

4

federal claims. Because Plaintiffs are standing in the shoes of a federal creditor and asserting applicable federal law, Plaintiffs are entitled to use the federal statute of limitations. New York's borrowing statute and choice of law rules do not apply to federal claims and cannot bar these causes of action.

### A. Under Section 544, Federal Law May be the "Applicable Law" for Avoidance of Fraudulent Transfers

The Bankruptcy Code provides that a trustee may invoke a fraudulent transfer provision for transfers made within two years of the petition date. 11 U.S.C. § 548(a)(1). In the alternative, the trustee may invoke Bankruptcy Code section 544(b), which provides:

> [T]he trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title. . . .

11 U.S.C. § 544. In other words, a trustee may step into the shoes of certain unsecured creditors—sometimes called a "triggering creditor" or a "golden creditor"—to avoid transfers that are avoidable only under longer statutes of limitations available under state or federal fraudulent transfer laws. *See, e.g., In re Bernard L. Madoff Inv. Securities LLC*, 454 B.R. 317, 337 (Bankr. S.D.N.Y. 2011) (noting that "a trustee is permitted to bring New York fraudulent conveyance actions looking back six years from the Filing Date in accordance with section 544(b)" because the New York law has a six-year statute of limitations). State fraudulent transfer laws similar to that adopted by New York frequently are invoked in the context of Bankruptcy Code section 544(b) to avoid fraudulent transfers dating back more than the two years available under section 548. *See* Robert W. Miller, *Overtime for Estate Representatives Stepping into the Shoes of the U.S.*, 33 Am. Bankr. Inst. J. 24, 24 (2014) (noting that 80% of states use four-year statutes of limitations, four use six-year statutes of limitations, and one uses a statute of limitations limited only by the equitable doctrine of laches).

5

While Plaintiffs have asserted claims under state law, they have also asserted claims under the Federal Debt Collection Procedures Act ("**FDCPA**")[6] and Puerto Rico's Internal Revenue Code of 2011 ("**Puerto Rico IRC**"), both of which have longer statutes of limitations.[7] Here, the Complaint specifically names the Pension Benefit Guaranty Corporation ("**PBGC**") as a creditor that could bring a claim under the FDCPA. Compl. at ¶¶ 200, 207.[8]

The phrase "applicable law" under section 544(b)(1) means *any* applicable law, including federal law. *See, e.g., Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*, 570 B.R. 816, 824–25 (Bankr. D. Idaho 2017) (determining trustee could rely on federal law and Internal Revenue Service as qualifying creditor for avoidance of fraudulent transfers under section 544). All that is asked is whether there is a triggering creditor that would have had the ability to bring such a claim to recover the transfer on the date of the bankruptcy petition. That question could appropriately be subject to the law of the forum state, the law of another state, or applicable federal law such as the FDCPA. *Id.* There are numerous cases where bankruptcy courts have upheld a trustee's right to reach to the "applicable law" of other fora, including federal law. Courts have upheld the ability of a trustee to use the FDCPA as "applicable law" to pursue fraudulent transfer actions. *See, e.g.*, *In re Tronox Inc.*, 503 B.R. 239, 273–75 (Bankr. S.D.N.Y. 2013); *see also Vieira v. Gaither (In re Gaither)*, 595 B.R. 201, 214 (Bankr. D.S.C. 2018) (concluding that FDCPA is "applicable law" under section 544 and that the IRS is a qualifying creditor); *CVAH*, 570 B.R. at 826 (observing

---

[6] This statute confusingly shares the same acronym with the Fair Debt Collection Practices Act, but is entirely unrelated to the latter, more widely-known statute.

[7] Six years under the FDCPA. 28 U.S.C. § 3306(b)(2); seven years under the Puerto Rico IRC. 13 L.R.P.A. § 30621(a)(1).

[8] Although the PBGC had a valid claim against the Sears estates under the FDCPA at the time of the Lands' End Spin-off, if there was any doubt on this subject, Plaintiffs could amend the complaint to also include the Occupational Safety and Health Administration as a federal government creditor with a valid claim against the Sears estates under the FDCPA at the time of the Lands' End Spin-off.

that "a significant majority of the courts that have considered it agree that a bankruptcy trustee

may utilize the FDCPA under § 544(b)(1)"); *In re Alpha Protective Servs., Inc.*, 531 B.R. 889, 906

(Bankr. M.D. Ga. 2015) (specifically finding that "the FDCPA is 'applicable law' for the purposes

of § 544.").

     While some courts have reached different conclusions, most of these rulings rely on the

Fifth Circuit's discredited decision in *MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant*

*Corp.)*, 675 F.3d 530, 536 (5th Cir. 2012). *Mirant* is not binding on this Court, nor is it persuasive.

*Mirant* ignores the clear language of the statute and resorts to a misreading of the legislative history

to reach its result: this is why the majority of authority refrains from following its rule that the

FDCPA may not be used under section 544. *See Tronox*, 503 B.R. at 273–75 (outlining criticism

of *Mirant*).

### B.  New York's Choice of Law Rules Do Not Apply to FDCPA Claims

     New York's "borrowing statute" and statutes of limitations do not apply to claims under

the FDCPA. *Tronox*, 503 B.R. at 274 n.42. Even assuming that the Non-Insider Defendants'

arguments as to the application of New York choice of law rules are correct as an initial matter, it

does not mandate dismissal of either Count 1 or Count 2 as Plaintiffs' avoidance claims also arise

under federal law, and federal law provides for the applicable statute of limitation. State law cannot

be used to override section 544 or the FDCPA.

     Notably, none of the cases the Non-Insider Defendants cite establish that section 544

claims may only be brought under state law, much less only under the state law suggested by the

choice of law rules of the forum state of the bankruptcy proceeding. For example, the Non-Insider

Defendants rely on two cases — *G-I Holding* and *Trinsum Group* — for the principle that this

Court should apply New York's "borrowing statute" to this case. Neither case is applicable here,

as the plaintiffs in both originally brought their claims under New York fraudulent transfer law in

the first instance. In *Trinsum*, the plaintiff brought section 544 claims that invoked New York law.

*O'Toole v. Karnani (In re Trinsum Grp.)*, 460 B.R. 379, 389 (Bankr. S.D.N.Y. 2011) (noting that

"the [plaintiff] only addresses New York law"). Likewise, *G-I Holding* involved claims that were

originally brought under New York fraudulent transfer law. *Official Comm. of Asbestos Claimants*

*of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 35 n.10 (S.D.N.Y. 2002). These cases, where the

parties *chose* to apply New York law, do not bear on the question of whether parties *must* apply

New York choice of law rules when claims are asserted under section 544.

The Non-Insider Defendants also impermissibly draw a largely artificial division between

the question of the appropriate statute of limitations and standing. For example, the Non-Insider

Defendants reference "tolling" the statute of limitations. It is not clear what the Non-Insider

Defendants mean by "tolling" the statute of limitations.[9] There are two distinct time requirements

implicated when a trustee initiates an avoidance action under section 544(b):

> If the creditor in whose place the trustee stands under § 544(b)
> would have been barred by the statute of limitations on the
> bankruptcy petition date, then the trustee may not proceed. *See In re*
> *Bernstein*, 259 B.R. 555, at 559 (Bankr. D.N.J. 2001). However, if
> the limitations period did not expire with respect to the creditor as
> of the petition date, then § 546(a) provides the trustee with a two
> year period after the entry of the order for relief in which to bring an
> avoidance action. *Id.* at 558–59.

*In re Innovative Commc'n Corp.*, No. ADV 08-3004, 2011 WL 3439291, at *43 (Bankr. D.V.I.

Aug. 5, 2011), *aff'd*, No. ADV. 3:08-03004, 2013 WL 5432316 (D.V.I. Sept. 27, 2013). The six-

year statute of limitations for claims under the FDPCA had not lapsed as of the Petition Date (the

transfers sought to be avoided and recovered were made on or about April 4, 2014 and the Petition

---

[9] Certain statutes contain a "discovery rule" exception, which deem the statute of limitations to commence
only from when fraud reasonably could have been discovered, as opposed to when the fraud occurred.
However, Plaintiffs have not argued any discovery rule applies here, as PBGC would have a valid claim as
of the Petition Date irrespective of this exception.

Date was October 15, 2018), and therefore section 546(a) provided Plaintiffs with two years after the order for relief to bring these claims. Plaintiffs timely brought their claims within two years of the order for relief. Neither Count 1 nor Count 2 are time-barred by New York or other law, and the Non-Insider Defendants' Motion must be denied on this ground.

### C.   The Defendants' Theory Violates Fundamental Principles of American Jurisprudence

The notion advanced by the Non-Insider Defendants – that state law rules regarding statute of limitations can be applied to bar an agency of the federal government from asserting a federal cause of action subject to a statute of limitations imposed by Congress – violates fundamental principles of American jurisprudence in two respects.

### 1.   Under the Doctrine of *Nullum Tempus*, Agencies of the United States Are Not Subject to State Law Statutes of Limitations

The Supreme Court has held, under the principle of *nullum tempus occurrit regi*, or "no time runs against the king," "the United States is not bound by state statutes of limitation . . . in enforcing its rights." *CVAH*, 570 B.R. at 834 (quoting *United States v. Summerlin*, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights.")). This doctrine "finds its modern justification in the policy that public rights, revenues, and property should not be forfeited due to negligence of public officials." *CVAH*, 570 B.R. at 834 (quoting *S.E.C. v. Rind*, 991 F.2d 1486, 1491 (9th Cir. 1993)).

The basis for the application of this principle to the claims asserted by Plaintiffs pursuant to section 544(b) is that section 544(b) is a "derivative" statute that allows the estate representative to step into the shoes of a creditor—even agencies of the United States. *In re Kipnis*, 555 B.R. 877, 883 (Bankr. S.D. Fla. 2016) (citing *In re Kaiser*, 525 B.R. 697 (Bankr. N.D. Ill. 2014)). In such a scenario, the "***unsecured creditor's*** ability to trump the applicable state statute of limitations might

9

derive from its sovereign immunity, but the ***estate representative's*** ability to override that same limitation derives from § 544(b)." *In re Greater Se. Cmty. Hosp. Corp. I*, 365 B.R. 293, 304 (Bankr. D.C. 2006) (emphasis added). It is irrelevant whether the estate representative is performing a public or private function (which inquiry might otherwise apply to the underlying creditor in a traditional sovereign immunity analysis)—the focus is merely on whether requirements of section 544(b) are met. *In re Kipnis*, 555 B.R. at 883.

As a result, courts have held that "there is authority that the United States cannot be barred from recovery in an action under a State fraudulent conveyance law because of a State limitations period, and that the ***only limitations*** are provided by 28 U.S.C. §§ 2415(a) and 2416(c), even when the United States is a plaintiff in such a suit." *Tronox*, 503 B.R. at 274–75 (emphasis added) (finding the federal law applied the applicable statute of limitations to a fraudulent transfer claim asserted pursuant to section 544(b) where the United States was the triggering creditor); *see also United States v. Nemecek*, 79 F.Supp.2d 821, 825–27 (N.D. Ohio 1999) (collecting cases and concluding that "state statutes delineating the amount of time in which an action may be brought, even those with extinguishment provisions, may not be applied to preclude the federal government from litigating claims for fraudulent transfer."); *United States v. Jepsen*, 131 F. Supp. 2d 1076 (W.D. Ark. 2000) (concluding "that the United States is not bound by the state's fraudulent conveyance statute of limitations simply because it looks to state fraudulent conveyance law in seeking to set aside a transfer"); *United States v. Moore*, 968 F.2d 1099, 1101 (11th Cir. 1992) (fraudulent conveyance action is a "quasicontractual claim, and therefore subject to the six-year statute of limitations set forth in § 2415(a)"); *United States v. Neidorf*, 522 F.2d 916, 917–18 (9th Cir. 1975) (same).

10

The novel argument advanced by the Non-Insider Defendants here that seeks to bar otherwise valid claims by agencies of the United States based on state law statute of limitations principles violates the doctrine of *nullum tempus*.

> **2.  The Six-Year Statute of Limitations Implemented by Congress for Claims Arising Under the FDCPA Preempts State Law Statutes of Limitation**

The argument advanced by the Non-Insider Defendants also violates the fundamental principle that federal statutes of limitation preempt state law. "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitations is definitive." *See Holmberg v. Ambrecht*, 327 U.S. 392, 395 (1940); *see also South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 507 (1986) ("For it is well established that federal claims are subject to state statutes of limitations *unless there is a federal statute of limitations* or a conflict with federal policy.") (emphasis added); *E.E.O.C. v. W.H. Braum, Inc.*, 347 F.3d 1192, 1197 (10th Cir. 2003) (where federal law supplies a statute of limitations, "there is no gap that must be filled by borrowing a state statute of limitations"); *Bd. of Trs. Of W. Conference of Teamsters Pension Tr. Fund v. H.F. Johnson Inc.*, 830 F.2d 1009, 1016-17 (9th Cir. 1987) (finding ERISA claim was timely notwithstanding state law to the contrary and noting that such holding "is consistent with the general law concerning federal preemption of state statutes of limitations"); *Saffron v. Dep't of Navy*, 561 F.3d 938, 941 (D.C. Cir. 1977) (for some statutes "Congress has prescribed limitation periods, and when it has done so its mandate, of course, must be obeyed."); *Rohr v. Crime Victims Compensation Comm'n*, No. 16-00162, 2019 WL 3294798, at *5 (D. Hawaii) (July 22, 2019) (claim asserted pursuant to federal Americans with Disabilities Amendments Act subject to statute of limitations imposed under that statute, not state law*); In re Greater Se. Cmty. Hosp. Corp. I*, 365 B.R. 293, 302 (Bankr. D.C. 2006) ("In the

case of government creditors, the statute of limitations provided by federal law to the specific creditor in question trumps any statute of limitations set forth in the applicable state fraudulent transfer law under the Supreme Court's ruling in *United States v. Summerlin*.").

Here, the triggering creditors assert claims arising under the FDPCA, a federal statute imposed by Congress that contains its own six-year statute of limitations applicable to claims asserted thereunder. Under the principles articulated above, that federal statute of limitations preempts state law – and in fact Courts frequently apply the FDCPA six-year statute of limitations to fraudulent transfer claims that would otherwise be barred by applicable state law. *See CVAH, Inc.*, 570 B.R. at 834 (Bankr. D. Idaho 2017) (six-year statute of limitations under the FDCPA was applicable over Idaho's four-year statute of limitations); *Gordon v. Harrison* (*In re Alpha Protective Servs.*), 531 B.R. 889 (Bankr. M.D. Ga. 2015) (six-year statute of limitations under the FDCPA was applicable over Georgia's four-year statute of limitations); *Tronox*, 503 B.R. 239, 274 (Bankr. S.D.N.Y. 2013) (six-year statute of limitations under the FDCPA was applicable over Oklahoma's four-year statute of limitations).

## III.     The Section 546(e) Safe Harbor Does Not Apply to the Lands' End Transfers

Section 546(e) provides, in relevant part, that a trustee may not avoid "a transfer made by or to (or for the benefit of) a …financial institution [or] financial participant…in connection with a securities contract . . . ." In order to prevail on their Motion, the Non-Insider Defendants must show that the two section 546(e) safe harbor elements apply to the Lands' End Transfers: first that there is a "qualifying transaction" and second, that the transaction was made by a "qualifying participant." *In re Nine W. LBO Sec. Litig.*, No. 20 MD. 2941 (JSR), 2020 WL 5049621, at *6 (S.D.N.Y. Aug. 27, 2020). Here, neither prong applies.

This safe harbor exception does not apply to the Lands' End Transfers because they were neither settlement payments nor transfers made "in connection with a securities contract." Indeed,

the Lands' End transaction was simply a one-way dividend of the stock of Lands' End to Sears shareholders, in order for the shareholders to capture the value of Sears's "crown jewels" at the expense of Sears itself. *See* Compl. ¶¶ 6, 105-110. The dividend was the end object of the spin-off, and there was no contemporaneous or subsequent securities contract entered in connection with that dividend. The Non-Insider Defendants ask this Court to hold that a transferor can convert this mere one-way dividend payment into a safe-harbored securities contract by providing for a contemporaneous sale of a few shares on the side, prior to the distribution. No court has ever applied section 546(e) in such a fashion and in fact, several courts have expressly held that such one-way dividends are ***not*** covered by section 546(e). *See In re Tronox*, 503 B.R. at 341 (noting that a one-way payment is not a settlement payment); *In re Global Crossing, Ltd.*, 385 B.R. 52, 56 n.1 (Bankr. S.D.N.Y. 2008) (rejecting argument that receipt of a dividend amounted to a settlement payment, as recovery of an improper dividend from an ultimate recipient does not implicate the risks to the stability of the securities market underpinning the safe harbor exception).

The fundamental purpose of section 546(e) is to prevent the insolvency of a commodity or securities firm from spreading and causing disruptions in the financial markets.[10] That purpose is not fulfilled by prohibiting trustees from avoiding the payments of improper dividends to their ultimate recipients.

---

[10] *See* Jay Jaffe, *How Big Is the § 546(e) Forward Contract Safe Harbor?*, XXXII ABI Journal 1, 28, 72-73, February 2013 (reviewing legislative history to note that safe harbor provisions added in 1982 were over concern "about the 'massive losses and chain reactions that could occur if the market were to move sharply in the wrong direction,' and the continued purpose was to 'minimize the displacement caused in [the] commodities and securities market in the event of a major bankruptcy affecting those industries.'") (*internal citations omitted*).

Even if there were no such fatal flaw in Defendants' argument, section 546(e) is inapplicable on the independent basis that there was no qualifying participant here, as Sears cannot be deemed a financial institution.

### A.    The Lands' End Transfer Was Not a "Qualifying Transaction"

The Lands' End Transfers are not qualifying transactions because they were gratuitous transfers without consideration. This crucial distinction matters in the analysis of whether these transfers constituted a "qualifying transaction" for the purposes of the section 546(e) safe harbor.

The Lands' End Transfers were not made in connection with a securities contract because neither Sears nor any of the Non-Insider Defendants contracted with anyone to receive or sell their shares. While the Second Circuit has noted the "extraordinary breadth" of the definition of "securities contract," the foundational elements of a contract must still be present, and they are not here. *In re Tribune Company Fraudulent Conveyance Litigation*, 946 F.3d 66, 81 (2d Cir. 2019), *petition for cert. filed*, 2020 WL 3891501 (U.S. July 6, 2020) (quoting *In re Madoff*, 77 F.3d at 417 for proposition that definition of securities contract includes not only a contract for the purchase, sale, or loan of a security, but also any agreement or transaction similar to such contract). Critically, the applicable definition of a "securities contract" requires the ***exchange of consideration*** (which of course could be in the form of executory or contingent promises) for shares of or options in a security. *See* 11 U.S.C. § 741(7)(A)(i) (defining a "securities contract" as "a contract for the purchase, sale, or loan of a security."). Because there was no exchange for consideration in connection with the Lands' End Transfer, there was no securities contract.

The leading authority here is Judge Gerber's decision in the *Global Crossing*. There, the court determined that the payment of a "pure dividend" was not subject to the section 546(e) safe harbor. *In re Global Crossing, Ltd.*, 385 B.R. 52, 56 n.1 (Bankr. S.D.N.Y. 2008) (adopting the analysis from *Weinman v. Fidelity Capital Appreciation Fund (In re Integra Realty Res., Inc.)*,

14

198 B.R. 352 (Bankr. D. Colo. 1996), *aff'd*, 354 F.3d 1246 (10th Cir. 2004)). The *Global Crossing* court noted that neither the purpose nor the statutory language of section 546(e) applied to the recovery of dividends paid to shareholders. In so holding, the court reasoned that the payment of the dividends did not result in a change to the shareholders' original shares—their shares remained intact as they were. This logic applies with equal force here. The Non-Insider Defendants did not lose their existing Sears shares in the Lands' End Transfer. The amount they were given was based on their Sears holdings, but those holdings themselves remained unchanged. (*See* ECF No. 41, Ex. 8, p. 16 (noting that shareholders receiving Lands' End shares retained their Sears shares)).

The Non-Insider Defendants attempt to divert the Court's attention from the applicable law—which does not support their position—by asserting a red herring argument that turns on the definition of "purchase" and "sale" under laws not implicated here, including the Securities Exchange Act of 1934 and the Uniform Commercial Code (the "**UCC**"). The Non-Insider Defendants' analysis ignores the crucial issue: whether the definition of "securities contract" *under section 741(7)(A)* includes a one-way transfer without any consideration. The Non-Insider Defendants do not cite a single case in which a purely gratuitous transfer of stock was held to fall under the definition of "securities contract" for the purposes of section 741(7)(A). All of the cases cited by the Non-Insider Defendants in which parties exchanged securities without consideration were cases examining the UCC. *See, e.g., Smouha v. MTA and J.P. Morgan Chase*, 797 N.Y.S.2d 278, 285 (N.Y. Sup. Ct. 2005). Had Congress intended section 741(7)(A) to embrace the definitions under the UCC, it could have done so clearly and expressly.

The Non-Insider Defendants' argument on this point further misses the mark because the relevant question is whether the Non-Insider Defendants were parties to a contract, which requires the exchange of some consideration to be valid. *See, e.g., In re Cairns & Assocs., Inc.*, 372 B.R.

637, 651–52 (Bankr. S.D.N.Y. 2007) (describing elements of a valid contract under New York law). Even the *Madoff* decision examines whether the agreement at issue was a "securities contract" by reference to the law of contract generally. *Madoff*, 773 F.3d at 421 (citing Restatement (Second) of Contracts § 3 (1979) for the purposes of defining the concept of an "agreement."). Likewise, the analysis in *Madoff* hinges on the fact that even though the Madoff Ponzi scheme did not actually engage in the securities transactions, there was a contract between Madoff's putative securities firm and its clients, with mutuality of consideration, governing the purchase and sale of securities. *Madoff*, 773 F.3d at 420.

Here, there never was an agreement between the transferee and the transferor—the transfer of the Lands' End shares was made without consideration at all and without Non-Insider Defendants' agreement or direct consent. (*See* ECF No. 41, Ex. 4 (Lands' End Information Statement)). Nor was there any contract between the transferees and the transferors directly. None of the Non-Insider Defendants would have a cause of action for breach of contract for what amounts to a gratuitous transfer of stock. Instead, the Non-Insider Defendants resort to other alleged agreements, strictly internal to the Debtor Plaintiffs, to support their Motion.

The Non-Insider Defendants argue that because an admittedly "small aspect" of the transaction involved the sale of Lands' End shares on the public market for cash, the entire transaction somehow falls into the category of being a "securities contract."[11] Even an expansive

---

[11] Non-Insider Defendants' Brief, p. 14. This argument also assumes, without sufficient factual basis, that the sale of these fractional Lands' End shares actually occurred. The Complaint is devoid of any allegations relating to this purported action, and the Non-Insider Defendants' assumption that it occurred relies improperly upon the Lands' End Distribution Agreement and the Lands' End Information Statement. While these documents contemplate this fractional share sale taking place, they do not (and cannot) provide evidence that such sale actually did take place. Resolution of this factual issue—which is foundational to the Non-Insider Defendants' argument—is inappropriate at the motion to dismiss stage. *See, e.g., 45 John Lofts, LLC v. Meridian Capital Grp. LLC (In re 45 John Lofts LLC),* 599 B.R. 730, 748 (Bankr. S.D.N.Y.

definition of the term "securities contract" cannot support this result. That other ancillary transactions may have involved securities does not transform the dividend into a securities contract. This conclusion is supported by the holding in *Merit Management*, which counsels courts to look not at the component parts to a transfer, but the "overarching transfer" as a whole. *Merit Mgmt. LP v. FTI Consulting, Inc.*, 138 S.Ct. 883, 894–95 (2018). What the Non-Insider Defendants ask this Court to do is precisely what the Supreme Court rejected in *Merit Management*—hold that because a different transfer of Lands' End shares that Plaintiff is *not* seeking to avoid allegedly was in connection with a securities contract, the transfer of Lands' End shares to Defendants that Plaintiffs do seek to avoid must be safe harbored. *Merit Management* forecloses this argument. Here, the transfer that Sears seeks to avoid is the gratuitous distribution of Lands' End shares to existing shareholders. That there were ancillary sales does not transform the entirety of the contract into a "securities contract" even under the most expansive definition of the term.

The Prescott Motion makes arguments similar to those made by the Non-Insider Defendants and should be denied for the same reasons. As with the Non-Insider Defendants' Motion, the Prescott Motion alleges that the Lands' End Transfers are safe-harbored because they were made "in connection with" a securities contract. The Prescott Motion, however, goes a step further than the Non-Insider Defendants' Motion, arguing that the relevant "securities contract" is actually multiple internal contracts that were ancillary to the Lands' End Transfers. For the reasons described above, these agreements are not relevant to the determination of whether the Lands' End Transfers are covered by section 546(e). Even more fundamentally, however, these ancillary agreements were not themselves contracts for the purchase or sale of securities, but rather, were

---

2019) (finding that numerous questions of fact precluded the application of section 546(e) at the motion to dismiss stage).

contracts that governed an internal restructuring that preceded the payment of a dividend. The Prescott Motion characterizes these ancillary agreements in vague terms (without actually attaching them as exhibits) but fails to describe how they effected a purchase or sale of securities.

None of the cases cited in the Prescott Motion involve facts similar to those here—in which existing shareholders were given a gratuitous dividend. In fact, nearly all of the cases discussed in the Prescott Motion involve purchases or sales with independent third parties. *See In re Nine W. LBO Sec. Litig.*, 2020 WL 5049621 (S.D.N.Y. Aug. 27, 2020) (transfers were made to shareholders as part of a leveraged buyout transaction with a third party buyer); *Holliday v. K Rd. Power Mgmt., LLC (In re Bos. Generating LLC)*, 617 B.R. 442, 492-93 (Bankr. S.D.N.Y. 2020) (transfer was part of an integrated transaction involving both an intercompany transfer and a sale to a third party); *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020) (transfer of securities was made to secure debt held by third party defendants and overarching transaction involved the purchase of equity interests in third party energy business). The one case Defendants cite that does not involve a third-party transaction—*U.S. Bank Nat'l Assn v. Verizon Communs. Inc.*, 892 F. Supp. 2d 805, 815-16 (N.D. Tex. 2012)—is nonetheless distinguishable for several reasons. First, *Verizon* involved the incorporation of a new spin-off company, while here, the same corporate entity—Lands' End—existed before and after the Lands' End spin-off. Second, the transaction at issue in *Verizon* that preceded the spin-off was an actual sale of the stock of the operating company to the spin-off company for both cash and notes, *i.e.* consideration. No such consideration was provided for the Lands' End Transfers; rather Lands' End borrowed $500 million and gifted it back to Sears. *See* Comp., ¶ 108, 111-112. Third, and most importantly, in *Verizon* the spun-off company itself was in bankruptcy and attempted to claw back the cash portion of the purchase price it paid to Verizon as part of the securities contract; the

18

spun-off shares were not the subject of the fraudulent transfer and were essentially beside the point. Here, in contrast, the spin-off itself is the subject of the fraudulent transfer claim and any internal shuffling that preceded it is beside the point.

The Prescott Motion's argument that the Lands' End Transfers are covered by section 546(e) fails for an independent reason: it relies upon documents and factual allegations that are extrinsic to the Complaint. As discussed at length in Plaintiffs' Response in the First Action, motions to dismiss are "limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated into the complaint by reference, as well as to matters of which judicial notice may be taken." *Haynes v. Chase Bank USA, N.A. (In re Haynes)*, No. 11-23212 (RDD), 2014 WL 3608891, at *1 (Bankr. S.D.N.Y. July 22, 2014). Motions to dismiss based on section 546(e) are no exception. *See, e.g.*, *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243, 266 (Bankr. S.D.N.Y. 2010) ("The Fund Defendants' invocation of the 546(e) defense is at best premature. Section 546(e) provides an affirmative defense that, unless clearly established on the face of the Complaint, 'does not tend to controvert the [Trustee's] prima facie case.'" (internal citations omitted)).

Ignoring this well-settled law, the Prescott Motion's argument that the Lands' End Transfers were made pursuant to a securities contract turns entirely on consideration of extrinsic documents—"the SDA *and various other contracts effecting the separation of the Lands' End Business from the Sears Business*"—which the movants contend "together constituted a 'securities contract.'" Prescott Motion at 8 (emphasis added). None of these "other contracts"—or "Ancillary Agreements," as they are subsequently defined in the Prescott Motion—are discussed or incorporated by reference in the Complaint or even proffered to the Court. And without

19

consideration of these ancillary agreements, the Prescott Motion's argument on this point necessarily fails.[12]

The expansive and unsupported arguments advanced by the Non-Insider Defendants and the Prescott Parties, if accepted by this Court, would result in an unwarranted evisceration of avoidance law in this country. For example, under the various Defendants' arguments, a classic fraudulent transfer, such as a cash dividend to shareholders by an insolvent company, could be rendered unavoidable so long as it was associated in some way with a self-serving agreement to buy or sell a *de minimus* number or debt or equity securities or to transfer internally ownership of subsidiary. This position is unworkable in practice. If the definition of "securities contract" were to include any gratuitous transfer of securities, attaching a single share of stock to any otherwise nakedly fraudulent transfer would, under the Non-Insider Defendants' logic, make that transfer categorically unavoidable under the section 546(e) safe harbor. Inasmuch as the purpose of section 546(e) is relevant post-*Merit Management*, the statutory concern of section 546(e) is intended to protect the securities markets, not create massive loopholes in avoidance laws that would permit widespread corporate looting.

While the question of how the section 546(e) safe harbor defense applies to complex transactions is indeed difficult and unsettled in the wake of *Merit Management* and the Supreme Court's potential review of the *Tribune* litigation, its sweep is certainly not as far as the Defendants would have it. Congress did not intend to provide for an escape hatch that would allow insolvent companies to strip assets at the expense of creditors with reckless abandon so long as they somehow connected those transfers with a "securities contract."

---

[12] If the Court admits these extrinsic documents and converts the Non-Insider Defendants' and Prescott Defendants' Motions into ones for summary judgment, the factual issues here preclude a decision, as discussed in further detail above.

### B.   The Lands' End Transfer Was Not To, From, or For the Benefit of a Financial Institution

The Non-Insider Defendants allege that because Computershare Trust N.A. ("**Computershare Trust**") was involved in the Lands' End transfers, Sears Holdings Corporation ("**Sears**") and Sears Roebuck and Co. ("**Sears Roebuck**") should be deemed financial institutions, such that the transfer was made by a "financial institution" and thus the Lands' End Transfers were to a "qualifying participant" under the section 546(e) safe harbor. Obviously, Sears and Sears Roebuck are not themselves banks or clearing agencies. The Non-Insider Defendants' Motion instead claims they can be deemed financial institutions based on their supposed relationship with Computershare Trust and the recent *Tribune* decision, *In re Tribune Company Fraudulent Conveyance Litigation*, 946 F.3d 66, 81 (2d Cir. 2019), *petition for cert. filed*, 2020 WL 3891501 (U.S. July 6, 2020)).

Defendants' argument turns on alleged facts appearing nowhere in the Complaint. Instead, these arguments are based on evasive and incomplete claims as to the contents of documents that are not mentioned in or implicitly incorporated by reference into the Complaint.[13] The paragraphs of the Complaint describing how the Lands' End spin-off was accomplished make no mention of any third parties contracted to effectuate the distribution, let alone describe the details of any alleged delegated functions. The Complaint more than meets the relevant pleading standards by describing how the spin-off was accomplished: a stock dividend was approved by and made by

---

[13] Even if it were proper for the Court to take judicial notice of extrinsic documents (which it is not), they cannot be considered for the truth of their contents. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir. 1991) (noting that courts may *not* consider the contents of publicly filed documents "for the truth of the matters asserted" therein; *see also Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the **fact** that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents.").

Sears Holdings, which initially received the shares from Sears Roebuck, to Sears Holdings' shareholders. *See* Compl. ⁋⁋ 108-109, 196-197, and 204.

Whatever firm or firms was or were used to handle back-office functions in support of the spin-off is completely irrelevant to Plaintiffs' *prima facie* case. Plaintiffs neither were required to plead such facts, nor did they plead around purportedly inconvenient facts relevant to their Lands' End claims.

Strictly as a procedural matter the Motions must be denied, as they turn on alleged facts outside the record. Indeed, Defendants did not even submit the key agency agreement governing the relationship between Sears Holdings and Computershare for inspection by the Court in support of their Motions.

Alternatively, to the extent the Court determines to admit the documents and convert this motion to one for summary judgment, numerous material fact issues exist which make a decision on the merits premature at this stage. Plaintiffs have submitted with this Response the operative document referenced in the Non-Insider Defendants' Brief but omitted from their submissions: the Lands' End Distribution Agent Agreement (the "**LEDAA**"). *See Declaration of Richard J. Reding*, Ex. A.[14] As the LEDAA shows, *two different* Computershare entities were involved in helping Plaintiffs distribute the Lands' End shares to Sears's stockholders: Computershare Trust Company and Computershare, Inc. *Id.* ⁋ 1. Per the LEDAA, many, if not all, of the critical functions related to the Lands' End Transfers were handled through Computershare, Inc., a separate non-financial institution entity. For example, selling the fractional shares was a task vested in Computershare,

---

[14] The confidentiality designation on the LEDAA was placed by the Debtor Plaintiffs; Plaintiffs waive that designation for the purposes of Plaintiffs' Response.

Inc. *Id.* ¶ 5.B. Similarly, distributing the cash proceeds received from the sale of the fractional shares was another function delegated to Computershare, Inc. *Id.* ¶ 5.C.

Importantly, even without considering the duties *contractually assigned* to each Computershare entity, discovery is necessary to determine which Computershare entity (if any) *actually performed* the spin-off duties as agent. In the First Action, Plaintiffs served a subpoena on each of the Computershare entities for documents relevant to the Seritage Rights Transfers. *See* Plaintiff's First Action Response, p. 26 n. 106. That discovery has not yet been completed, and there has been no discovery yet as to the duties each Computershare entity performed as to the Lands' End Transfers. At this juncture, it cannot be determined whether a financial institution was acting as an agent for Sears such that Sears itself would be defined as a financial institution for purposes of the safe harbor defense.

*Tribune* may well have established an interpretation of sections 101(22) and 546(e) that could apply to many fraudulent transfer cases, but at the motion to dismiss stage a finding that the safe harbor applies cannot be based on uncertain or disputed facts. *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (noting that on a motion to dismiss, facts must be viewed in the light most favorable to the non-moving party).[15]

## CONCLUSION

The Non-Insider Defendants' motion to dismiss should be denied, along with all Joinders and the other motions to dismiss. The claims in this adversary are not time-barred as the Plaintiff

---

[15] Further, while *Tribune*'s holding that the customer of a financial institution acting as its agent (as defined in Tribune) in connection with a securities contract can itself be deemed a financial institution, capable of making protected transfers under section 546(e) is currently binding on this Court, the *Tribune* case is currently pending on a *writ of certiorari* before the United States Supreme Court. *In re Tribune Company Fraudulent Conveyance Litigation*, 946 F.3d 66 (2d Cir. 2019)), *petition for cert. filed*, 2020 WL 3891501 (U.S. July 6, 2020)

is entitled to stand in the shoes of a triggering creditor and assert claims under federal law, meaning that neither New York's choice of law rules nor its borrowing statute have any application to this case. Similarly, the section 546(e) safe harbor does not apply to gratuitous transfers as both the Lands' End and Seritage Transfers were, and there are issues of fact regarding the role of Computershare that cannot be resolved on a motion to dismiss. Accordingly, the Plaintiff respectfully requests that the motions to dismiss be denied in their entirety, with the parties reserving all individual arguments for separate motions to dismiss.

Dated: February 19, 2021

**ASK LLP**

By: /s/ *Joseph L. Steinfeld, Jr.*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Brigette G. McGrath, Esq., NY SBN 4962379
Kara E. Casteel, Esq. MN SBN 0389115
Richard J. Reding, Esq. MN SBN 0389945
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone: (651) 406-9665
Fax: (651) 406-9676
Email: jsteinfeld@askllp.com
    bmcgrath@askllp.com
    kcasteel@askllp.com
    rreding@askllp.com

*Counsel to the Official Committee of
Unsecured Creditors of Sears Holdings
Corporation, et al., acting on behalf of the
Debtors' Estates*