# Exhibit A

# DISTRIBUTION AGENT AGREEMENT

This Distribution Agent Agreement (the "Agreement") is entered into as of this day of April 2, 2014 by and among Sears Holdings Corporation, a company organized and existing under the laws of the State of Delaware (the "Company"), Computershare Inc., a Delaware corporation and its fully-owned subsidiary, Computershare Trust Company, N.A., a national banking association (in its capacity as Distribution Agent, including the performance of Reminder Mailing, and Unclaimed Property and Lost Shareholder services as provided herein, collectively hereunder, the "Distribution Agent" or individually the "Trust Company" and "Computershare," respectively).

WHEREAS, the Board of Directors of the company has approved the distribution (the "Distribution") of all of the outstanding shares (the "Shares") of common stock, par value $0.01 per share, of Lands' End, Inc. ("Lands' End"), a Delaware corporation and currently a wholly owned subsidiary of the Company;

WHEREAS, Lands' End has filed with the U.S. Securities and Exchange Commission ("SEC") a registration statement on Form 10 (File No. 001-09769), which registration statement includes an information statement setting forth certain matters relating to the Distribution, and which information statement will be further amended prior to the declaration of effectiveness by the SEC of the registration statement of which it forms a part (as so amended, the "Information Statement");

WHEREAS, the Distribution is to be effected through (i) a pro rata distribution to the holders of record on the books of the Company's Transfer Agent and Registrar (the "Shareholders") of the issued and outstanding common shares of the Company as of the close of business on the record date (as such date is set forth in the Information Statement, the "Record Date"), on the basis of the distribution ratio (as such ratio is set forth in the Information Statement) specifying the number of Shares to be distributed for every one (1) common share of the Company, par value $0.01 per share (the "Company Common Stock"), outstanding on the Record Date and (ii) payments of cash in lieu of fractional Shares, as further described herein;

WHEREAS, the Distribution is scheduled to occur at the effective time set forth in the Information Statement (the "Effective Time");

WHEREAS, the Trust Company is presently the Transfer Agent and Registrar for the Company Common Stock; and

WHEREAS, the Company desires that the Trust Company and Computershare act as Distribution Agent in connection with the Distribution, and the Trust Company and Computershare have indicated their willingness to do so.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

1. **Appointment of Distribution Agent.**

The Company hereby confirms the appointment of the Trust Company and Computershare, as Distribution Agent, and the Trust Company and Computershare hereby agree to serve as such, upon the terms and conditions set forth herein.

2. **Share Reserves.**

Prior to the Effective Time, the Company shall (i) provide to the Distribution Agent such certifications as may be reasonably required by the Distribution Agent, including the resolutions of the Board of Directors of the Company, as certified by the Secretary or any Assistant Secretary of the Company on the date thereof as being complete, accurate and in effect, relating to the Distribution, (ii) provide an opinion letter of counsel for the Company addressed to the Distribution Agent with

respect to the following: (A) the Company's organization and existence under the laws of its state of organization; (B) the status of all Shares covered by the appointment under the Securities Act of 1933, as amended, and any other applicable federal or state statute; and (C) that all issued Shares are, and all unissued Shares will be, when issued, validly issued, fully paid and non-assessable, and (iii) authorize, or procure the authorization of, the Distribution Agent to deliver Shares in an amount to be determined as of the Record Date and provided by the Company to the Distribution Agent (the "Share Reserve"), so that the Distribution Agent may effect the Distribution to all Shareholders as instructed by the Company. The Shares will be held by the Distribution Agent, in its capacity as Distribution Agent, on behalf of the Shareholders until the distribution is made.

**3.    Notification and Processing.**

The Distribution Agent is hereby authorized and directed, and hereby agrees to:

A. Accept and respond to all telephone requests for information relative to the Distribution.

B.  Issue, as Transfer Agent and Registrar for the Shares, upon receipt of certified written instructions or certified electronic files, and deliver such Shares by issuance of a statement of holding reflecting shares in the Direct Registration System ("Statement of Holding") to Shareholders; provided that no statement in respect of any fraction of any Share shall be issued.

C. Promptly deliver Statements of Holding as provided in Paragraph B above.

**4.    Cash Reserves.**

The proceeds of the sale of fractional shares described in Section 5, below ("CIL Funds") shall be held pending distribution pursuant to the terms of this Agreement in an account in Computershare's name, as agent of the Company, and Computershare may receive earnings in connection with the CIL Funds at Computershare's risk and for its benefit of funds held in those accounts from time to time.

**5.    Processing of Cash Payments.**

No fractional interests in Shares will be issued or credited to book-entry accounts in the Distribution, but in lieu thereof each Shareholder who would otherwise have been entitled to fractional Shares in the Distribution will be paid cash in accordance with the procedures set forth in paragraphs A, B, C, D and E of this Section 5.  Computershare is hereby authorized and directed, and hereby agrees, as soon as practicable after the Effective Time, to:

A. Determine the number of whole Shares and fractional Shares allocable to each Shareholder in connection with the Distribution.

B. Aggregate all such fractional interests in Shares into whole Shares and sell the whole Shares obtained thereby in open market transactions, in each case, at then-prevailing trading prices on behalf of such Shareholders who would otherwise be entitled to fractional interests in Shares.

C. Distribute to each such Shareholder, such Shareholder's ratable share of the cash proceeds (net of discounts and commissions) of such sale, based upon the average gross selling price per Share after making appropriate deductions for any amount required to be withheld for United States federal income tax purposes and any brokerage fees incurred in connection with these sales of fractional Shares; such sales of fractional Shares shall occur as soon after the Effective Time as practicable and as determined by the Distribution Agent.

D. With respect to each Shareholder, arrange for the issuance of a single check for cash in lieu of fractional Shares to which such Shareholder is entitled.

CONFIDENTIAL
Confidential

SEARS_RC06203026
RS_SHC_00996689

  E. If appropriate, deliver the cash-in-lieu payment by first class mail under the provisions of the Distribution Agent's first class mail bond protecting the Distribution Agent from loss or liability arising out of the non-receipt or non-delivery of such payment or arising out of the replacement thereof, for any deliveries where market value does not exceed the amount of the Distribution Agent's first class mail bond. Any mail delivery exceeding such amount shall be delivered by registered mail or overnight mail and shall be insured separately for the replacement value of its contents at the time of mailing.

  F. Prepare, file with the appropriate governmental agency and deliver to each Shareholder all appropriate tax information forms, including but not limited to Forms 1099B, covering dividend payments, or any other distributions made by the Distribution Agent pursuant to this Agreement, to any Shareholder of the Company during each calendar year, or any portion thereof, during which the Distribution Agent performs services hereunder pursuant to the tax instruction letter to be provided by the Company.

**6.** **Compensation of the Distribution Agent by the Company.**

The Company shall pay fees for the services rendered hereunder, as set forth in the Fee Schedule attached as Exhibit A. The Distribution Agent shall also be entitled to reimbursement from the Company for all reasonable, necessary and documented expenses paid or incurred by it in connection with the administration by the Distribution Agent of its duties hereunder.

**7.** **Indemnification/Limitation of Liability.**

7.1 Company Indemnity.

The Company covenants and agrees to indemnify and to hold the Distribution Agent harmless against any reasonable, necessary and documented out-of-pocket costs, expenses (including reasonable fees of its outside legal counsel), losses or damages, which may be paid, incurred or suffered by or to which it may become subject, arising from or out of, directly or indirectly, any claims or liability resulting from its actions as Distribution Agent (including as Distribution Agent the provision of services under Section 8 herein and any services set forth in the Fee and Service Schedule attached hereto) pursuant to the terms set forth in this Agreement; provided, that such covenant and agreement does not extend to, and the Distribution Agent shall not be indemnified with respect to, such costs, expenses, losses and damages incurred or suffered by the Distribution Agent as a result of, or arising out of, its gross negligence, bad faith, willful misconduct or fraud.

In addition to the foregoing, the Distribution Agent:

A. Shall have no duties or obligations as Distribution Agent other than those specifically set forth herein or as may subsequently be requested of the Distribution Agent by the Company with respect to the services contemplated hereunder and agreed upon by the Distribution Agent;

B. May rely on and shall be indemnified and held harmless by the Company in acting upon any certificate, instrument, opinion, notice, letter, facsimile transmission, telegram or other document, or any security delivered to it pursuant to this Agreement, and reasonably believed by it to be genuine and to have been signed by the proper party or parties; and

C. May consult with counsel satisfactory to it (including counsel for the Company).

7.2 Instructions.

From time to time, Distribution Agent may apply to any officer of the Company for instruction and the Company shall provide Distribution Agent with such instructions concerning the services. In addition, Distribution Agent may consult with legal counsel for the Distribution Agent or the Company with respect to any matter arising in connection with the services to be performed by the Distribution Agent under this Agreement, and Distribution Agent and its agents and subcontractors shall not be liable and shall be

- 3 -

CONFIDENTIAL
Confidential

SEARS_RC06203027
RS_SHC_00996690

indemnified by the Company for any action taken or omitted by it in reliance upon any Company instructions or upon the advice or opinion of such counsel for the Company. The Distribution Agent shall not be held to have notice of any change of authority of any person, until receipt of written notice thereof from the Company.

7.3    Distribution Agent Indemnification/Limitation of Liability.

Distribution Agent shall be responsible for and shall indemnify and hold the Company harmless from and against any and all losses, damages, costs, charges, counsel fees, payments, expenses and liability arising out of or attributable to: (a) Distribution Agent's refusal or failure to comply with the terms of this Agreement, (b) Distribution Agent's gross negligence, bad faith, willful misconduct or fraud, or (c) Distribution Agent's breach of any representation or warranty hereunder, for which Distribution Agent is not entitled to indemnification under this Agreement; provided, however, that except in the case of the Distribution Agent's bad faith, willful misconduct or fraud, the Distribution Agent's aggregate liability during any term of this Agreement with respect to, arising from, or arising in connection with this Agreement, or from all services provided or omitted to be provided under this Agreement, whether in contract, or in tort, or otherwise, is limited to, and shall not exceed, the amounts paid hereunder by the Company to Distribution Agent as fees and charges, but not including reimbursable expenses.

7.4    Notice.

In order that the indemnification provisions contained in this Section 7 shall apply, upon the assertion of a claim for which one party may be required to indemnify the other, the party seeking indemnification shall promptly notify the other party of such assertion, and shall keep the other party advised with respect to all developments concerning such claim. The indemnifying party shall have the option to participate with the indemnified party in the defense of such claim or to defend against said claim in its own name or the name of the indemnified party. The indemnified party shall in no case confess any claim or make any compromise in any case in which the indemnifying party may be required to indemnify it except with the indemnifying party's prior written consent.

**8.    Unclaimed Property and Lost Shareholders.**

The Distribution Agent shall report unclaimed property to each state in compliance with state laws and shall comply with Section 17Ad-17 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), for lost Shareholders. The Distribution Agent will charge the Company its standard fees plus reasonable, necessary and documented out-of-pocket expenses (including the cost of due diligence mailings) for such services. The Company acknowledges and agrees that in the case of reports made and property delivered pursuant to an initial or voluntary compliance program administered by private auditing agents retained by state unclaimed property administrators, the Distribution Agent will be compensated for its efforts in facilitating the Company's involvement in such a program including the provision of the necessary records and remittance of property in the manner required by the program by means of an expense reimbursement payment based on a percentage of the property remitted to the states through participation in the program. The Company will not be charged for any services performed by the Distribution Agent in conjunction with the program to the extent that the Distribution Agent receives an expense reimbursement and agrees to reimburse the Distribution Agent for any out-of-pocket expenses incurred in the performance of such services.

**9.    Further Assurance.**

From time-to-time and after the date hereof, the Company shall deliver or cause to be delivered to the Distribution Agent such further documents and instruments and shall do and cause to be done such further acts as the Distribution Agent shall reasonably request (it being understood that the Distribution Agent shall have no obligation to make any such request) to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith or to assure itself that it is protected in acting hereunder.

- 4 -

CONFIDENTIAL
Confidential

SEARS_RC06203028
RS_SHC_00996691

10. **Term and Termination.**

This Agreement shall remain in effect until (a) the Distribution is complete and any outstanding checks for cash payment in lieu of fractional Shares have been reported as unclaimed property to the appropriate states in accordance with applicable state law; (b) it is terminated by either party upon a material breach of this Agreement by the other party, which breach remains uncured for 30 days after written notice of such breach has been provided by the non-breaching party; or (c) 30 days' written notice has been provided by the Company to the Distribution Agent; <u>provided</u> that, for the avoidance of doubt, if the Company decides not to effect the Distribution, the Company may terminate this Agreement and, in such event, shall not be obligated to pay any fees (in accordance with the attached Exhibit A or otherwise), except for the reasonable, necessary and documented out-of-pocket expenses of the Distribution Agent. Upon termination of this Agreement, the Distribution Agent shall retain all documentation as required by applicable law.

11. **Notices.**

Until further notice in writing by either party hereto to the other party, all written reports, notices and other communications between the Distribution Agent and the Company required or permitted hereunder shall be duly given in writing and delivered in person or sent by facsimile, first class mail, postage prepaid, telecopier or overnight courier guaranteeing next day delivery, addressed as follows::

If to Company:

Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attn: Corporate Secretary

If to the Distribution Agent, to:

Computershare Trust Company, N.A.
c/o Computershare Inc.
250 Royall Street
Canton, MA 02021
Attn: Reorganization Department

12. **Governing Law.**

This Agreement shall be governed by and construed in accordance with the laws of The Commonwealth of Massachusetts.

13. **Assignment.**

A. Except as provided in Section 13(B) below, neither this Agreement nor any rights or obligations hereunder may be assigned by either party without the written consent of the other party.

B. The Distribution Agent may, without further consent on the part of the Company, subcontract with other subcontractors for systems, processing, and telephone and mailing services as may be required from time to time; provided, however, that the Distribution Agent shall be as fully responsible to the Company for the acts and omissions of any subcontractor as it is for its own acts and omissions.

14. **Third Party Beneficiaries.**

CONFIDENTIAL
Confidential

SEARS_RC06203029
RS_SHC_00996692

Except as explicitly stated elsewhere in this Agreement, nothing under this Agreement shall be construed to give any rights or benefits in this Agreement to anyone other than the Distribution Agent and the Company and the duties and responsibilities undertaken pursuant to this Agreement shall be for the sole and exclusive benefit of the Distribution Agent and the Company. Neither party shall make any commitments with third parties that are binding on the other party without the other party's prior written consent.

15. **Amendment.**

This Agreement may not be changed orally or modified, amended or supplemented without an express written agreement executed by each of the parties hereto.

16. **Counterparts.**

This Agreement may be executed in separate counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

17. **Relationship of The Parties.**

This Agreement does not constitute an agreement for a partnership or joint venture between the Distribution Agent and the Company.

18. **Force Majeure.**

In the event either party is unable to perform its obligations under the terms of this Agreement because of acts of God, terrorist acts, strikes, equipment or transmission failure or damage reasonably beyond its control, or other cause reasonably beyond its control, such party shall not be liable for damages to the other for any damages resulting from such failure to perform or otherwise from such causes. Performance under this Agreement shall resume when the affected party or parties are able to perform substantially that party's duties.

19. **Consequential Damages.**

Neither party to this Agreement shall be liable to the other party for any consequential, indirect, special or incidental damages under any provision of this Agreement or for any consequential, indirect, special or incidental damages arising out of any act or failure to act hereunder even if that party has been advised of or has foreseen the possibility of such damages

20. **Severability.**

If any provision of this Agreement shall be held invalid, unlawful, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired.

21. **Confidentiality.**

21.1    The parties to this Agreement agree that all books, records, information and data exchanged or received pursuant to the negotiation or the performance of this Agreement, including of any party to this Agreement all supporting documentation submitted in connection therewith, shall remain confidential, and shall not be voluntarily disclosed to any other person, except as may be required by law.

21.2    Required or Permitted Disclosure. In the event that any requests or demands are made for the disclosure of confidential information, other than requests to Distribution Agent for records of Shareholders pursuant to standard subpoenas from state or federal government authorities (e.g., in divorce and criminal actions), the party will notify the other party to secure written instructions from an

CONFIDENTIAL
Confidential

SEARS_RC06203030
RS_SHC_00996693

authorized officer of such party as to such request or demand and to provide the other party the opportunity to obtain a protective order or other confidential treatment in advance of such disclosure. Each party expressly reserves the right, however, to disclose the confidential information to any person whenever it is advised by counsel that it may be held liable for the failure to disclose such confidential information or if required by law or court order.

**22.    Survival.**

The provisions of Sections 7-9, 11-27 of this Agreement shall survive any termination, for any reason, of this Agreement.

**23.    Merger of Agreement.**

This Agreement constitutes the entire agreement between the parties hereto and supersedes any prior agreement with respect to the subject matter hereof whether oral or written.

**24.    Priorities.**

In the event of any conflict, discrepancy, or ambiguity between the terms and conditions contained in this Agreement and any schedules or attachments hereto, the terms and conditions contained in this Agreement shall take precedence.

**25.    Successors.**

All the covenants and provisions of this Agreement by or for the benefit of the Company or the Distribution Agent shall bind and inure to the benefit of their respective successors and assigns hereunder.

**26.    No Strict Construction.**

The parties hereto have participated jointly in the negotiation and drafting of this Agreement.  In the event any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by all parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement.

**27.    Descriptive Headings.**

Descriptive headings contained in this Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

CONFIDENTIAL
Confidential

SEARS_RC06203031
RS_SHC_00996694

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers, hereunto duly authorized, as of the day and year first above written.

| **Computershare Trust Company, N.A.** <br> **Computershare Inc.** <br> On behalf of both entities | **Sears Holdings Corporation** |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Title: DIRECTOR | Title: Robert A. Riecker |
| Date: APRIL 2, 2014 | Date: Vice President, Controller and Chief Accounting Officer |

- 8 -

CONFIDENTIAL
Confidential

SEARS_RC06203032
RS_SHC_00996695

## Exhibit A - Distribution Agent (Spin) Fee Schedule

### Term

The fees to act as Distribution Agent in connection with Sears Holdings Corporation's ("SHC") spin-off of its Lands' End business are as follows:

### Transaction Fees

- **SPIN-OFF**    **$2.40 PER ACCOUNT**
    - Project Management          Included
    - Spin calculation             Included
    - Issuance of DRS Advice       Included
    - Issuance of Cash-in-lieu check  Included
    - Issuance of Tax forms        Included

### Excluded Items

> Any services associated with new duties, legislation or regulatory fiat, which become effective after the date of this proposal (these will be provided on an appraisal basis)

> All out-of-pocket expenses such as statements, checks, envelopes and postage, will be billed as incurred

### Scope Of Services

> Project Management
>   - Assign a dedicated transaction project manager
>   - Coordinate project management team to include project manager, technology services, operations, communications center, and finance
>   - Review, consult and collaborate on design of shareholder communications documents
>   - Systems programming as needed
>   - Programming to set-up IVR system
>   - Coordinate file extract for mail processing
>   - Train investor service representatives
>   - Coordinate sale of fractional shares on the open market if required

> Account Distribution
>   - Convert over record date position from SHC company register
>   - Run spin-off calculation against SHC shareholder file to determine number of Lands' End shares each SHC shareholder will receive
>   - Aggregate and sell fractional Lands' End shares to fund cash in lieu of fractional share payments
>   - Manage due bill process
>   - Coordinate file extract for mail processing

A-1

**Print and mail, as required**

- Welcome letter to Lands' End shareholders, as required
- DRS statements including name, address, and number of shares
- Cash-in-lieu checks
- Tax forms
- File tax information with the IRS, as required
- Replace checks alleged to have been lost or destroyed

**Payment for Services**

It is agreed that an invoice for the project management per account fees will be rendered and payable on the effective date of the Distribution. An invoice for any reasonable, necessary and documented out-of-pocket expenses realized will be rendered and payable on a monthly basis, except for postage expenses in excess of $5,000. Funds for such mailing expenses must be received one (1) business day prior to the scheduled mailing date.

A-2

CONFIDENTIAL
Confidential

SEARS_RC06203034
RS_SHC_00996697